The case as stated by his Honor was as follows: Two questions were made in this cause; the first as to boundary and the other upon the statute of limitations. The plaintiff offered in evidence a grant to John Waggoner dated in 1784, the calls of which were admitted to be A, B, C, as represented on the annexed diagram. From C the distance called for would terminate at F, and a line from that point to the beginning would not include the locus in quo; but the plaintiff contended (302) that he had the right to go to D, as the true terminus, and from thence to A, which would cover the place of the trespass. He further offered in evidence a deed to himself from Thomas Ring, Sr., dated in November, 1793, for 200 acres of land, and proved by one Charles Bouner that he, the witness, had surveyed the land many years ago, that *Page 240 
he began at A and run to D, where he made a corner; that he did not then run the cross line, but years after he did run the line and made a corner on the gum at N; that the remainder of the lines he did not run. The plaintiff then, to establish D as Thomas Ring, Sr.'s, old corner, introduced several witnesses who proved two pines, a popular and chestnut to have been old marked trees on the line from A to D; that one of the pines was blacked and the marks corresponded in years with the grant. The surveyor testified that these trees, as pointed out, would be in a line from A to D. The defendant offered in evidence a grant to one John Snow, dated in November, 1797, the boundaries of which were established to be according to the dotted lines on the diagram. He also offered a deed to himself from Snow, dated in June, 1833. The defendant then proved that Snow's son had settled on this tract of land; and cleared down to the dotted line between G and F; that at the time he cleared, something was said about the line, and he said he did not know where it was; that the son, as his father's tenant, had cultivated the land five or six years before the sale to defendant, and continued the
[EDITORS' NOTE: THE DIAGRAM IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 20 N.C. 240.] *Page 241 
possession of the locus in quo up to the time of the sale. After the sale to the defendant and immediately upon the going out of Snow, the defendant entered and continue the possession (there being no interval between the possession of Snow and the defendant), and was about to remove the fence so as to run it above the black line as claimed by the plaintiff. The plaintiff forbid the defendant's removing the rails, notwithstanding which the defendant did remove them, and this was the trespass complained of, which was committed about a month before the suit was brought. Marks were found on the dotted line, between G and F, corresponding in age with the grant to Snow, but no marked corners were found at either of those points.
The court charged the jury "that the plaintiff, in running from (303) the third corner which was admitted to be C, would be confined to distance unless he could satisfy them the corner had been made beyond it. That the plaintiff could not be allowed to reverse a subsequent line in order to fix the terminus of a prior line, unless by doing so there existed something to render the means of identifying more certain than the calls of the deed; that if the jury should be satisfied as to the trees spoken of on the black line from A to D, and were convinced that such a line was actually run as the line at the time of the original survey, they might then extend the line from C towards D, and thus decide whether the true corner was at D or F. As to the question of the statute of limitations, the court charged that "although more than three (304) years had elapsed from the time of the trespass being first committed by Snow, the former tenant, yet if he moved off, and the defendant entered after the date of his deed and removed the rails, as testified to by the witnesses, as the plaintiff had been living on the 200-acre tract he would be considered as holding to his true boundary, and might sustain his action." The plaintiff had a verdict and judgment and the defendant appealed.
The case made up by the judge, who tried this cause, states that two questions arose upon the trial: One as to the boundaries of the deed under which the plaintiff claimed the land where the alleged trespass was committed, and the other whether the action was barred by the statute of limitations. Upon the first question there has been no dispute here. The defendant's counsel admits, and very properly, that the judge's instruction upon that point was correct. On the second question, if it can be regarded as one confined to the operation of the statute of limitations, this court would hold with the court below that the *Page 242 
defendant was not protected by that statute. But the difficulty is, whether the case does not show that another question was necessarily presented, though not in express terms stated for the decision of that court, and whether the decision thereon was not erroneous. After setting forth the instructions upon the question of boundary the case states that the land whereon the trespass was alleged to have been committed is also within the boundaries of the grant to Snow; that Snow held the possession thereof for five or six years before he conveyed to the defendant; that after the conveyance the defendant entered in upon Snow's tenant, and that the defendant remained in possession continually thereafter until the institution of the action. It states also that after the defendant thus entered he was about to remove a fence which had been put thereon by Snow's tenant, when he was forbidden by the plaintiff; and this removal was the trespass complained of. Upon these facts a controversy (305) arose, as the case states, upon the statute of limitations, when his Honor charged the jury that although more than three years had elapsed from the time of the trespass committed by Snow, yet if he moved off and the defendant thereupon entered and removed the rails, inasmuch as the plaintiff had been living within the limits of his tract, "he would be considered as holding to his true boundary, and therefore
might sustain his action." Upon this statement and upon this instruction we are compelled to see that the question of law really presented for consideration was whether the plaintiff could be regarded as having such a possession of the locus in quo at the time of the removal of the rails by the defendant, that this act amounted to a trespass. If he had, the action could be sustained, because the trespass was within three years before the institution of the suit. If he had not, the plaintiff could not recover, not indeed because of the statute of limitations, for the defendant was not sued for the act of a former possessor, but because the removal of the rails complained of was not a trespass.
Upon this question of law the instruction was erroneous. Admit that thelocus in quo was within the true boundary of the plaintiff's tract, and that the plaintiff was in possession within the limits of his tract, yet before the alleged trespass was committed and continually thereafter, the defendant had the actual adverse possession of this particular part. Now the position that where a man is residing on a tract his possession extends to the boundaries of that tract, must be understood with the exception of such parts thereof as are in the actual adverse possession of another. The possession of a part is a possession of the whole only so long as no other is in the actual possession of any part. As soon as another takes possession of any part, either with or without title, the former possessor loses the possession of that part. Graham v. Houston, 4 Dev., 232. Without a possession actual or constructive in the plaintiff *Page 243 
trespass could not be committed upon him, for trespass is an injury to the possession.
It must not be understood from our noticing this objection that we allow questions of law to be raised here, except such as appear on the record, strictly so called, which were not before the court from which the appeal was taken. Our rule is to regard, as nearly as (306) we can, the case made by the judge in the light of a bill of exceptions for specified errors. The presumption is that whatever is not complained of was rightfully done. But we cannot presume against what appears. If by any reasonable intendment we could suppose facts shown, which, notwithstanding those admitted constituted the defendant's act a trespass — inasmuch as the opinion of the judge upon that point was not directly called for, we might hold it our duty to make the intendment. But if we cannot — and we do not see how we can — then the jury was misdirected upon a question of law presented by the pleadings and the evidence upon a matter material to the issues which they had to try. The consequence of the mistake — though perhaps it would not have occurred had that question been more distinctly propounded — has been a verdict and judgment against law. This is an error which, when shown to us, we are bound to correct.
The judgment of the Superior Court is to be reversed and a new trial awarded.
PER CURIAM. Judgment reversed.
Cited: Briggs v. Evans, 27 N.C. 21; State v. Langford, 44 N.C. 444;Bank v. Graham, 82 N.C. 491; Burton v. R. R., 84 N.C. 199; Thornton v.Brady, 100 N.C. 40; Walton v. McKesson, 101 N.C. 436; Roberts v.Preston, 106 N.C. 420.
(307)